1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:08-cr-00229-KJD-PAL |
| | ) | |
| vs. | ) | **REPORT OF FINDINGS** |
| | ) | **AND RECOMMENDATION** |
| ROBERT EUGENE MORRIS, | ) | |
| | ) | |
| Defendant. | ) | (M/Dismiss Ind. - Dkt. #18) |
| | ) | |
| _____ | ) | |

This court held a hearing in this matter on January 16, 2009 on Defendant Robert Eugene Morris's ("Morris") Motion to Dismiss the Indictment (Dkt. #18) which was referred to the undersigned for findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rules IB 1-3 and IB 1-4. The court has considered the Motion and the government's Response (Dkt. #20), Morris's Reply (Dkt. #24), and the arguments of counsel at the hearing on the Motion.

## BACKGROUND

The grand jury returned an indictment on September 10, 2008, charging Morris with one count of failure to register as a sex offender in violation of 18 U.S.C. § 2250. 18 U.S.C. § 2250(a) is part of the Sex Offender Registration and Notification Act ("SORNA" or the "Act"), which made it a federal felony offense for a sex offender who is required to register under SORNA to travel in interstate commerce and then fail to register.

### A.   Factual and Procedural Background

In 1995, Morris was convicted of second degree felony criminal sexual conduct in Michigan for which he received a sentence of thirty months probation. The government asserts and Morris does not dispute that Morris acknowledged his requirement to register as a sex offender. Defendant admits to registering in Michigan in 1995. Morris' most recent registration occurred in Michigan on July 9, 2008.

1   Mr. Morris allegedly moved to Nevada between July 9, 2008 and July 31, 2008.  On July 31, 2008, he

2   applied to rent an apartment in Las Vegas and was denied due to his Michigan sex offense conviction.

3   On August 22, 2008, Morris allegedly admitted he was required to register in Nevada and had not yet

4   done so.  He was arrested by the United States Marshal's Service on August 27, 2008 on a warrant

5   arising out of a criminal complaint.  See Dkt. ##1, 2, and 7.  On September 10, 2008, a federal grand

6   jury indicted Morris for failing to register as a sex offender in violation of 18 U.S.C. § 2250(a).

7               **B.     Morris's Constitutional Challenge of the Indictment**

8               Morris seeks to dismiss the Indictment, arguing that SORNA is unconstitutional on its face and

9   as applied to him on nine different grounds.  Although Morris also asserts an "as-applied" challenge in

10  his papers, at the hearing, counsel for Morris withdrew that challenge, acknowledging that the issue was

11  not ripe based upon the factual record.  First, Morris argues his prosecution under § 2250(a) violates his

12  rights to due process because he was not on notice of his obligation to register, and he could not comply

13  with SORNA's registration requirements because no state, including Nevada, had implemented a

14  SORNA compliant registration system at the time of the alleged offense.  Second, Morris states that

15  prosecution under § 2250(a) would violate his due process rights because he did not receive notice that

16  he was required to register under SORNA.  Third, Morris asserts that Congress lacked the power under

17  the Commerce Clause to enact the registration requirements contained in SORNA which requires

18  persons convicted of sex offenses under state law to comply with the federal registration system.

19  Fourth, assuming enactment of SORNA's registration requirements was a constitutional exercise of

20  Congress' Commerce Clause authority, Morris argues that § 2250(a) violates the Commerce Clause

21  because it lacks a necessary jurisdictional element – namely, that the defendant travel in interstate

22  commerce for the purpose of failing to register under SORNA.  Fifth, application of SORNA's

23  registration requirements violates the *Ex Post Facto* Clause of the Constitution for defendants, like

24  Morris, whose sex offenses were committed prior to the enactment of the SORNA.  Sixth, SORNA

25  violates Article I, §§ 1, 8 of the United States Constitution because Congress impermissibly delegated

26  the authority to decide whether the statute applies retroactively to the Attorney General.  Seventh, the

27  Attorney General's interim rule which applies § 2250(a) retroactively to defendants like Morris, whose

28  convictions were sustained prior to the passage of SORNA, is invalid because the Attorney General did

1  not comply with the notice and comment provisions of the Administrative Procedure Act.  Eighth, §
2  2250(a) is an unconstitutional exercise of federal power over the states and, therefore, violates the
3  Tenth Amendment.  Finally, Morris argues that SORNA infringes his constitutional right to travel in
4  interstate commerce.

5  **DISCUSSION**

6      **A.**    <u>**Motion to Dismiss Standard of Review**</u>

7      A motion to dismiss challenges the sufficiency of an indictment to charge an offense.  <u>United</u>
8  <u>States v. Sampson</u>, 371 U.S. 75, 78-79 (1962).  "An indictment is sufficient if it contains the elements
9  of the charged crime and adequate detail to inform the defendant of the charge and to enable him to
10 plead double jeopardy."  <u>United States v. Buckley</u>, 689 F.2d 893, 896 (9th Cir. 1982).  In determining
11 the sufficiency of the indictment, the court examines whether the indictment adequately alleges the
12 elements of the offense and fairly informs the defendant of the charge, and not whether the government
13 can prove its case.  <u>Id.</u> at 897.  In deciding a motion to dismiss, the court must take the allegations of the
14 indictment as true.  <u>Boyce Motor Lines, Inc., v. United States</u>, 342 U.S. 337, 343 n.16 (1952); <u>United</u>
15 <u>States v. Afshari</u>, 426 F.3d 1150, 1153 (9th Cir. 2005).  An indictment need not allege the
16 government's theory of the case or supporting evidence, but it must state the essential facts necessary to
17 apprise the defendant of the crime charged.  <u>Id.</u>

18     Rule 12 of the Federal Rules of Criminal Procedure requires a defendant to challenge a
19 defective indictment prior to trial.  <u>See</u> Fed. R. Crim. P. 12(b)(3)(A) & (B).  Rule 12(b)(2) permits a
20 party to raise "any defense, objection, or request that the court can determine without a trial of the
21 general issue."  <u>Id.</u>  A pretrial motion is generally "capable of determination" before trial if it involves
22 questions of law rather than fact.  <u>United States v. Shortt Accountancy Corp.</u>, 785 F.2d 1448, 1452 (9th
23 Cir. 1986).  The trial court may make preliminary findings of fact necessary to decide the legal
24 questions presented by the motion, but it may not invade the province of the jury in deciding a pretrial
25 motion to dismiss.  It is also well established that "[a] motion to dismiss is not a proper way to raise a
26 defense."  <u>United States v. Snyder</u>, 428 F.2d 520, 522 (9th Cir. 1970).

27     The indictment alleges Morris violated 18 U.S.C. § 2250(a).  The essential elements for a
28 § 2250(a) offense require the government to prove: (i) the defendant is a sex offender as defined by

3

1   SORNA and, therefore, required to register under SORNA, 18 U.S.C. § 2250(a)(1); (ii) federal

2   jurisdiction exists either because the defendant was convicted as a sex offender under federal law or

3   because the defendant traveled in interstate or foreign commerce, 18 U.S.C. § 2250(a)(2)(A) and (2)(B);

4   and (iii) the defendant knowingly failed to register or update his sex offender registration as required,

5   18 U.S.C. § 2250(a)(3), United States v. Hinen, 487 F. Supp. 2d 747, 750 (W.D. Va. 2007); United

6   States v. Samuels, 543 F. Supp. 2d 669, 673 (E.D. Ky. 2008).

7        The indictment alleges that between July 9, 2008 and August 26, 2008 in the State and Federal

8   District of Nevada, Morris: (1) was a person who was required to register under SORNA, (2) traveled in

9   interstate commerce, and (3) knowingly failed to register and update a registration as required by

10  SORNA in violation of § 2250(a).  The government's theory in this case is that Morris traveled from

11  Michigan to Las Vegas, Nevada, between July 9, 2008 and August 26, 2008 and failed to register in

12  Nevada as required by SORNA.  The indictment alleges the essential elements of the crime of failing to

13  register as required under SORNA and provides adequate detail to inform Morris of the charge to

14  enable him to plead double jeopardy.  It is, therefore, sufficient.  However, Morris challenges the

15  constitutionality of the statute on its face and as applied to him.  This is a matter capable of

16  determination before trial as a matter of law, rather than as a question of fact.  The court must,

17  therefore, examine and decide Morris's constitutional challenges to the statute under which he is

18  charged.

19      **B.    Relevant Statutory Provisions**

20      The parties agree that Morris was convicted of a sex offense in Michigan in 1995, sentenced to a

21  term of probation, and he registered as a sex offender as required under Michigan law.  The parties have

22  provided no further detail regarding the Michigan statute under which Morris was convicted, including

23  the obligations imposed by that statute for registration in the future.

24          **1.    Michigan Compiled Laws 750.520c.**

25      The parties agree that Mr. Morris was convicted of a sexually oriented offense in Michigan in

26  1995, was sentenced to thirty months probation, and that he registered as a sex offender in Michigan

27  after his conviction.  Neither the government nor Morris identified the statute under which Morris was

28  convicted in their papers or at oral argument.  Morris states that he was convicted of "improper sexual

4

1   contact." Motion at 1:25. The government states that Morris was convicted of felony criminal sexual

2   conduct in the second degree. Response at 2:18-19. It appears that Morris was convicted under

3   Michigan Compiled Laws 750.520c of criminal sexual conduct in the second degree, a felony.

4   Although the parties acknowledge Morris was required to register as a sex offender, neither side

5   provided the court with any information concerning the duration or details of his obligation to register

6   under Michigan law.

7                    **2.    Chapter 179D of the Nevada Revised Statutes**

8            In Nevada, Chapter 179D of the Nevada Revised Statutes ("N.R.S.") governs the registration of

9   sex offenders and offenders convicted of a crime against a child. Until July 1, 2008, individuals

10  convicted of a crime against a child as defined by N.R.S. 179D.210 were required to register with a

11  local law enforcement agency and with the Division of Parole and Probation of the Department of

12  Motor Vehicles and Public Safety ("Division") if the offender resided in or was present for forty-eight

13  hours or more in the jurisdiction of a local law enforcement agency.  See N.R.S. § 179D.240.

14  N.R.S. 179D.250 required a sex offender to notify the Division of any change in address and provide

15  updated information within forty-eight hours after changing an address, and N.R.S. 179D.270 required

16  a sex offender convicted of a crime against a child to comply with these registration provisions for at

17  least fifteen consecutive years. Violation of the offender registration provisions for an offender

18  convicted of a crime against a child was a Category D felony punishable by a term of imprisonment for

19  a minimum term of not less than one year and a maximum term of four years and/or a fine of not more

20  than $10,000.  See N.R.S. 179D.290 and N.R.S. 193.130(2)(d).

21          N.R.S. 179D.460 required sex offenders convicted of a sexual offense as defined by

22  N.R.S. 179D.410 to register with local law enforcement agencies and the Division within forty-eight

23  hours after arriving or establishing residence in Nevada. It also required sex offenders to notify the

24  Division of any change of address and update registration information, for at least fifteen consecutive

25  years after conviction. Violation of the provisions of N.R.S. 179D.350 to 179D.550 was also a

26  Category D felony punishable from one to four years in prison and/or a fine of not more than $10,000.

27          In 2007, the Nevada legislature repealed, revised, and expanded the provisions of Chaper 179D

28  to conform to the provisions of the Federal Adam Walsh Child Protection and Safety Act of 2006 (the

1   "Walsh Act"), P.L. 109-248, 120 Stat. 587 (codified primarily in 42 U.S.C. §§ 16901-16962).  The

2   Nevada enactments were set to become effective July 1, 2008.  However, two lawsuits were filed

3   challenging certain of the new registration and community notification provisions passed by the Nevada

4   legislature to conform to the provisions of the Walsh Act.  On June 26, 2008, Nevada State District

5   Court Judge David Wall found that the registration and community notification requirements of

6   Assembly Bill 579 would result in significant and irreparable harm to the plaintiffs and other similarly

7   situated in Clark County, Nevada, and he granted a preliminary injunction restraining and enjoining

8   enforcement of these provisions.  The order set a briefing schedule and a hearing for arguments on the

9   plaintiff's complaint for declaratory relief.  See Order granting preliminary injunction in D.P.; WL

10  Plaintiffs v. State of Nevada, et al., Case No. A564966.

11       Additionally, on June 30, 2008, the Honorable James Mahan entered an injunction in this

12  federal district in ACLU of Nevada v. Masto, Case No. 2:08-cv-00822-JCM-PAL, enjoining

13  enforcement of certain provisions of the legislative changes and setting a briefing schedule and hearing

14  on constitutional challenges to the Nevada acts which were enacted to comply with the Walsh Act.

15  Judge Mahan granted a preliminary injunction following a hearing held on September 10, 2008, finding

16  certain provisions of the new laws violated the *Ex Post Facto* clause of the United States Constitution.

17  On October 7, 2008, Judge Mahan entered a revised Order granting permanent injunction (Dkt. #77),

18  finding that the July 2007 legislative enactments of Assembly Bill 579 and Senate Bill 471, taken

19  together, redefine who is considered a "sex offender," the way in which sex offenders are classified and

20  monitored, and what restrictions apply to sex offenders.  He found that AB 579 and SB 471 do not

21  provide any procedural due process protections for people who believe they have been miscategorized

22  as sex offenders to challenge the application of AB 579 and SB 471.  He also found that the retroactive

23  application of these bills is the equivalent of new punishment and, therefore, a violation of the *Ex Post*

24  *Facto* and Double Jeopardy Clauses of the U.S. Constitution, as well as the Contracts Clauses of the

25  U.S. and Nevada Constitutions.  Finally, he found that the bills violated the Due Process Clause of the

26  U.S. Constitution.  For these reasons, he entered a permanent injunction enjoining the enforcement of

27  AB 579 and SB 471.  The Attorney General filed a Notice of Appeal (Dkt. #83) on October 29, 2008.

28  At oral argument, counsel for Morris asserted that Judge Mahan's order found the two state bills

6

1    enacting Nevada's version of SORNA were unconstitutional on their face rather than as applied to the

2    named plaintiffs.

3               **3.**      **The Jacob Wetterling Act**

4          The Jacob Wetterling Act was enacted by Congress in 1994 and is commonly referred to as

5    "Megan's Laws."  See 42 U.S.C. § 14071.  The Jacob Wetterling Act provided federal funding to states

6    that enacted sex offender registration laws.  It also created a federal misdemeanor failure to register

7    offense punishable by up to one year imprisonment for sex offenders who failed to register in a state

8    where they resided, worked, or were a student.  42 U.S.C. § 14072(i).  By 1996, all states had enacted

9    Megan's Laws in some form.  See Smith v. Doe, 538 U.S. 84, 90 (2003).

10               **4.**      **SORNA**

11          Congress enacted the Walsh Act on July 27, 2006.  Title 1 of the Walsh Act contains SORNA

12    and the federal failure to register as a sex offender statute.  See 18 U.S.C. § 2250(a).  The stated

13    purpose of the Walsh Act is "[t]o protect children from sexual exploitation and violent crime, to prevent

14    child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam

15    Walsh and other child victims."  P.L. 109-248.  The stated purpose of SORNA is "to protect the public

16    from sex offenders and offenders against children" by establishing "a comprehensive national system"

17    for the registration of sex offenders.  42 U.S.C. § 16901.  "SORNA is essentially an effort by Congress

18    to close the loopholes in previous sex offender registration legislation and to standardize registration

19    across the states."  United States v. Ditomasso, 552 F. Supp. 2d 233 (D.R.I. 2008).

20          SORNA has provisions that apply to states and other provisions that apply to individuals.  The

21    Walsh Act applies to each state, the District of Columbia, native American tribal territories, and other

22    United States territories.  See § 16911(10), defining jurisdiction for purposes of the SORNA.  Each

23    jurisdiction has until July 27, 2009 to substantially comply with the requirements of SORNA or lose

24    part of its federal funding.  42 U.S.C. §§ 16924(a), 16925(a).  SORNA requires states to implement sex

25    offender registries which must include standard information and be compatible with a national

26    electronic data base.  42 U.S.C. §§ 16912, 16918, 16919.

27          In addition to establishing a national sex offender registration system, SORNA requires sex

28    offenders to "register, and keep the registration current, in each jurisdiction where the offender resides,

1    where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a).

2    SORNA defines the term "sex offender" as "an individual who was convicted of a sex offense" and

3    classifies all sex offenders into three different categories. 42 U.S.C. § 16911(1)-(4). A "sex offense" is

4    "a criminal offense that has an element involving a sexual act or sexual contact with another." Id.;

5    § 16911(5)(A)(I). A sex offender must initially register before completing a period of imprisonment, or

6    not later than three business days after being sentenced if not sentenced to imprisonment. 42 U.S.C.

7    § 16913(b). Under § 16913(b), a sex offender must initially register:

8              (1)    before completing a sentence of imprisonment with respect to the
                      offense giving rise to the registration requirement; or

9              (2)    not later than 3 business days after being sentenced for that offense,
10                    if the sex offender is not sentenced to a term of imprisonment.

11   Thereafter, a sex offender is required to keep his or her registration current by appearing in person in at

12   least one jurisdiction in which the sex offender is required to register and informing the registering

13   agency of any changes in personal information, such as a change of name, residence, or employment

14   status. Id. at § 16913(c). In the event of a change of name, residence, employment, or student status,

15   the sex offender must appear in person within three business days of the change in at least one

16   jurisdiction where the person resides, works, or is a student to update his registration information.

17   42 U.S.C. § 16913(c).

18           Section 16913(d) of SORNA delegates authority to the Attorney General of the United States to

19   specify the applicability of SORNA's requirements to sex offenders convicted before July 27, 2006

20   when SORNA took effect or its implementation in a particular jurisdiction and also to prescribe rules

21   for the registration of any sex offender unable to comply with the initial registration provisions of

22   SORNA. § 16913(d) provides that:

23           (d)    Initial registration of sex offenders unable to comply with subsection
                    (b) of this section
24
25           The Attorney General shall have the authority to specify the applicability of
             the requirements of this subchapter to sex offenders convicted before July
26           27, 2006 or its implementation in a particular jurisdiction, and to prescribe
             rules for the registration of any such sex offenders and for other categories
27           of sex offenders who are unable to comply with subsection (b) of this
             section.

28   ///

1    On February 28, 2007, the Attorney General promulgated an interim rule applying SORNA to

2   all sex offenders regardless of when they were convicted.  See Applicability of the Sex Offender

3   Registration and Notification Act, 72 Fed. Reg. 8894 (Feb. 28, 2007) (codified at 28 C.F.R. § 72

4   (2007)).  On May 30, 2007, the Department of Justice issued proposed guidelines for interpreting

5   SORNA, ("SMART Guidelines"), 72 Fed. Reg. 30,210 (May 30, 2007).  28 C.F.R. § 72.3.  SORNA

6   also created a new federal offense for failure to register, codified at 18 U.S.C. § 2250(a), which made

7   failure to register as a sex offender a felony and punishable with a maximum penalty of up to ten years

8   imprisonment and a $250,000 fine.  Section 2250(a) supersedes the Jacob Wetterling Act, which will be

9   repealed three years after SORNA's effective date.  42 U.S.C. § 14071, P.L. 109-248, Title I, § 129,

10   120 Stat. 600 (2006).

11         **C.     Morris's Constitutional Challenges**

12        Morris asserts various constitutional challenges to the following: (a) 42 U.S.C. § 16913, which

13   requires sex offenders convicted of state sex offenses to register under SORNA; and (b) 18 U.S.C. §

14   2250(a), which makes it a federal felony offense to fail to register.  In general, statutes are presumed

15   constitutional.  United States v. Morrison, 529 U.S. 598, 608 (2000).  A facial challenge of a statute is

16   "the most difficult challenge to mount successfully."  United States v. Salerno, 481 U.S. 739, 745

17   (1987).  To prevail on a facial challenge to the constitutionality of a statute, a litigant must satisfy the

18   heavy burden of showing that "no set of circumstances exists under which the [a]ct would be valid."  Id.

19   (finding defendant had not met his heavy burden of establishing the Bail Reform Act was facially

20   unconstitutional).  It is not enough to show that an act "might operate unconstitutionally under some

21   conceivable set of circumstances."  Id.

22         **1.     Due Process**

23        Morris argues his prosecution under § 2250 violates the fair notice requirements of the Due

24   Process Clause of the Fifth Amendment.  Because no state has implemented SORNA, Morris contends

25   he could not have been on notice of SORNA's registration requirements.  Citing United States v.

26   Dalton, 960 F.2d 121, 124 (10th Cir. 1992), he argues that it would violate the Due Process Clause to

27   prosecute him for failing to do something that is impossible to do.

28   / / /

1     The government responds by urging the court to follow the decisions of other courts which have

2 rejected substantive and procedural due process challenges to SORNA and other sex offender

3 registration laws.  The government cites <u>United States v. Templeton</u>, 2007 WL 445481 (W.D. Okla.

4 2007); <u>Doe v. Moore</u>, 410 F.3d 1337, 1345 (11th Cir. 2005); <u>Doe v. Tandeske</u>, 361 F.3d 594, 597 (9th

5 Cir. 2004); and <u>Gunderson v. Hvass</u>, 339 F.3d 639, 643 (8th Cir. 2003), as examples of cases in which

6 courts have rejected due process challenges to sex offender registration systems.   The government also

7 asserts that the fact that Nevada has not enacted a SORNA-compliant law does not affect Mr. Morris's

8 notice of the federal registration requirement.

9     In reply, Morris relies on the Sentencing Commission's guidelines to support his argument that

10 no violation of SORNA can occur until a jurisdiction enacts a SORNA compliant registration statute.

11 He also claims that prosecution under § 2250 is improper because § 2250 does not punish a sex

12 offender for failing to register as required by *state law* and that failing to register as required by state

13 law is already prohibited by the Wetterling Act, 42 U.S.C. § 14072(i)(2).  Rather, § 2250 imposes

14 criminal penalties for failing to register "as required by [*SORNA*]," which Morris claims is impossible

15 because no state has enacted SORNA.  18 U.S.C. § 2250(a) (emphasis added).  Additionally, Morris

16 argues Nevada and Michigan registration laws do not put him on notice of SORNA's registration

17 requirements because SORNA's registration requirements and criminal penalties are more severe than

18 those in Nevada and Michigan.

19     He also relies on the sex offender SMART Guidelines issued by the Attorney General May 30,

20 2007.  The SMART Guidelines were promulgated by the Attorney General pursuant to SORNA's

21 direction that guidelines be provided to the states to "interpret and implement" SORNA's regulatory

22 scheme.  42 U.S.C. § 16912.  The SMART Guidelines contain a detailed discussion of how existing

23 state registries do not meet SORNA's registration standards, and thus Morris argues that they confirm

24 that SORNA represents a regulatory scheme distinct from existing state sex offender registries.

25 SORNA's registration provisions are more onerous, and the penalties are more severe than the sex

26 offender registration systems enacted by Nevada or Michigan and, therefore, do not provide Morris fair

27 notice of his SORNA obligations.

28 / / /

10

1    Morris also argues his duty to register in Nevada cannot support a criminal prosecution under

2    § 2250(a) because the government has not alleged that he received notice of his requirement to register

3    as a sex offender under Nevada law.  He cites <u>Lambert v. California</u>, 355 U.S. 225 (1958) to support his

4    argument that he may not be prosecuted for failing to register unless he received actual knowledge of

5    the duty to register.  Finally, he cites the Rule of Lenity, which requires construction of an ambiguous

6    statute in favor of a defendant, claiming that he could not have foreseen that § 2250(a) required him to

7    register according to state law.

8    The Due Process Clause of the Fifth Amendment provides, "No person shall . . . be deprived of

9    life, liberty, or property, without due process of law."  Among other things, the Due Process Clause of

10   the Fifth Amendment safeguards the interest in fundamental fairness through notice and fair warning.

11   <u>Rogers v. Tennessee</u>, 532 U.S. 451, 460 (2001).  In <u>Lambert</u>, the Supreme Court held that a Los

12   Angeles felon registration ordinance violated the Due Process Clause of the Fourteenth Amendment

13   when applied to a person who had no actual knowledge of her duty to register.  Morris cites <u>Lambert</u> to

14   support his arguments that he may not be prosecuted under § 2250(a) in the absence of proof he

15   received actual knowledge of his duty to register under SORNA.  In <u>Lambert</u>, the Supreme Court

16   recognized the deeply rooted principle of law that ignorance of the law is no excuse.  355 U.S. at 228

17   (1957).  However, the Court also recognized that the Due Process Clause of the Fourteenth Amendment

18   places some limits on the exercise a local government's exercise of the police power.  The requirement

19   of notice is inherent in the concept of due process and "is required in a myriad of situations where a

20   penalty or forfeiture might be suffered for mere failure to act."  <u>Id.</u>  Thus, the Supreme Court held that

21   the Due Process Clause of the Fourteenth Amendment required "actual knowledge of the duty to

22   register or proof of the probability of such knowledge and subsequent failure to comply" before a

23   conviction under the Los Angeles ordinance could be upheld consistently with due process.  <u>Id.</u> at 229.

24   The court concluded that the ordinance violated due process as applied because the defendant had no

25   actual knowledge of the registration requirement, and the "circumstances which might move one to

26   inquire as to the necessity of registration [were] completely lacking."  <u>Id.</u>

27   The vast majority of courts that have addressed due process challenges to a prosecution under

28   SORNA have held that the Act does not violate a defendant's due process rights.  <u>United States v.</u>

11

1   Lawrence, 548 F.3d 1329, 1338 (8th Cir. 2008); United States v. May, 535 F.3d 912, 921 (8th Cir.

2   2008); United States v. Hinkley, 2008 U.S. App. LEXIS 24989 (10th Cir. Dec. 9, 2008); United States

3   v. Dixon, 2008 U.S. App. LEXIS at *9 (8th Cir. Dec. 22, 2008); Ditomasso, 552 F.Supp.2d 233; U.S. v.

4   Gould, 526 F.Supp.2d 538 (D. Md. 2007); Hinen, 487 F. Supp.2d 747 (W.D. Va. 2007); U.S. v.

5   LeTourneau, 534 F.Supp.2d 718 (S.D. Tex. 2008); Samuels, 543 F.Supp.2d 669; U.S. v. Lovejoy, 516

6   F.Supp.2d 1032 (D.N.D. 2007); United States v. Hann, 574 F.Supp.2d 827,835-36 (M.D. Tenn. 2008);

7   United States v. Senogles, 570 F.Supp.2d 1134, 1155-59 (D. Minn. 2008); United States v. Waybright,

8   561 F.Supp.2d 1154, 1173-74 (D. Mont. 2008); United States v. Vardaro, 575 F.Supp.2d 1179, 1186-87

9   (D. Mont. 2008); United States v. Keleher, 2008 U.S. Dist. LEXIS 105532 (E.D. Cal. Nov. 19, 2008);

10  United States v. Lamere, 2008 U.S. Dist. LEXIS 101116 (N.D.N.Y. Dec. 15, 2008); United States v.

11  Summers, 2008 U.S. Dist. LEXIS 101456 (D. Neb. Dec. 16, 2008); United States v. Contreras, 2008

12  U.S. Dist. LEXIS 102994 (W.D. Tex. Dec. 19, 2008).

13          In Ditomasso, the court rejected due process arguments similar to those raised here by Morris.

14  Ditomasso argued that charging him with violating § 2250(a) violated his due process rights to

15  fundamental fairness because it was impossible for him to comply with SORNA, as Rhode Island had

16  not yet implemented a SORNA complaint registry.  The court examined the language of § 2250(a) and

17  acknowledged that, at first blush, the argument was appealing because an element of the crime of not

18  registering is that the defendant "knowingly fails to register or update a registration as required by

19  [SORNA]."  However, on closer examination, the court concluded that the argument begs the question

20  of what SORNA requires.  The court concluded that the language of 42 U.S.C. § 16913(a) which

21  requires a sex offender to register and keep registration current in each jurisdiction where the offender

22  resides, where the offender is an employee, and where the offender is a student makes it clear that sex

23  offenders have a general obligation to register in their jurisdiction.  The court also concluded

24  the defendant was able to comply with SORNA's registration requirements because Rhode Island, like

25  every other state, had adopted Megan's Laws which require registration.

26          The Ditomasso decision recognized that SORNA does not specifically require sex offenders to

27  register under state law.  Addressing the defendant's argument that the statute was ambiguous, the court

28  concluded that "both the structure and purpose of the law show that Congress intended for sex

12

1    offenders to register in their states regardless of whether a state has fully implemented SORNA."

2    552 F.Supp.2d at 239.  The <u>Ditomasso</u> court carefully examined the Congressional Record in arriving at

3    its conclusion that Congress intended for sex offenders to register in their states regardless of whether

4    a state had fully implemented SORNA, finding that "any interpretation of § 2250 which allows a sex

5    offender to avoid registration in a state defies the structure and purpose of the law."  <u>Id.</u>

6         Similarly, the court in <u>Hinen</u> rejected a defendant's argument that SORNA violated his right to

7    procedural due process because he was not given actual notice that travel across state lines subjected

8    him to federal criminal penalties.  487 F.Supp.2d 747.  The court found that the fact that the defendant

9    may not have been advised of the specific requirements of SORNA did not constitute a due process

10   violation.  The court pointed out that since 1994, the Jacob Wetterling Act has required a sex offender

11   to register in his state of residence and any other state where he was employed, carried on a vocation, or

12   was a student.  <u>See</u> 42 U.S.C.A. § 14071(b).  The Jacob Wetterling Act also required sex offenders

13   registered in any state who move to another state to notify law enforcement authorities of their new

14   state of residence.  <u>Id.</u>  Because both the state where the defendant initially resided and the state where

15   he moved had sex offender registration requirements, the court concluded that "the defendant had

16   sufficient notice that failing to register as a sex offender was illegal."  <u>Hinen</u>, 487 F.Supp.2d at 754.

17        In <u>LeTourneau</u>, the court concluded the defendant had constitutionally adequate notice of his

18   duty to register as a sex offender because he was already under an obligation under state law to register

19   and update his registration if he moved to another state.  534 F.Supp.2d 718.  The defendant argued that

20   although he may have received notice of his obligation to register under state law, this was not

21   constitutionally adequate notice because he was entitled to notice of the more severe penalties imposed

22   by SORNA for failure to register.  The court rejected this argument, finding the defendant was aware

23   that failing to update his registration when moving to another state was a felony under state law.  The

24   court, therefore, held that his awareness that his failure to update his registration was a felony in the

25   state of his conviction qualifies as constitutionally effective notice under SORNA.

26        The court reached the same conclusion in <u>Samuels</u>.  543 F.Supp.2d 669.  There, the defendant

27   was convicted of a sex offense in New York in 1999 and was required to register as a sex offender for

28   ten years.  After he released from prison on probation, he signed a New York state registration

1  form informing him of his duty to register as a sex offender if he moved to another state.  He moved to

2  Kentucky, failed to register, and was charged with violating § 2250(a).  It was undisputed that the

3  defendant received no notice of SORNA's registration requirements.  However, the court held that his

4  due process rights were not violated because he was on notice of his obligation under state law to

5  register and update registration and notified that if he moved to another state, he may be required to

6  register as a sex offender in his new state.

7      Finally, in Lovejoy, the court denied the defendant's motion to dismiss a criminal prosecution

8  under § 2250(a), finding the Due Process Clause did not require that the defendant receive actual notice

9  of SORNA's registration requirements.  516 F.Supp.2d 1032.  Because the defendant was fully aware

10  of his responsibility to register as a sex offender under state law, he had sufficient notice that failing to

11  register as a sex offender was illegal and "ignorance of the new, independent obligation under federal

12  law (SORNA) to register as a sex offender is simply no excuse."  Id. at 1038; see also Gould,

13  526 F. Supp.2d at 544 (defendant's prior knowledge of a duty to register under state law qualified as

14  effective notice under SORNA).

15      Morris relies on Lambert to support his due process and lack of adequate notice arguments.  In

16  Lambert, the Supreme Court held that the defendant's conviction for failure to register as a felon

17  violated her due process rights because she received no prior notice of her duty to register. 335 U.S. at

18  229.  However, the Court assumed the defendant had no actual knowledge of her duty to register, and

19  there was no proof in the record that she probably received notice.  Id. at 227, 229.  Unlike Lambert,

20  Morris is not a "person, wholly passive and unaware of any wrongdoing" who is charged in a criminal

21  case.  Morris admits that he registered as a sex offender in Michigan as early as 1995.  Furthermore, the

22  government asserts, and Morris does not dispute, that he last registered as a sex offender in Michigan

23  on July 9, 2008.  The Jacob Wetterling Act of 1994 required Morris to register as a sex offender in any

24  state in which he resided, worked, or was a student.  By 1996, after passage of the Jacob Wetterling

25  Act, all fifty states had enacted sex offender registration acts or Megan's Laws in some form.  Smith v.

26  Doe, 538 U.S. at 90.

27      Morris had sufficient notice that failure to register and update his registration was illegal under

28  SORNA because of the long-standing state registration laws.  See May, 535 F.3d at 921 (finding

14

1   defendant who admitted in plea agreement he had an obligation under state laws to register and keep his

2   registration current when moving between jurisdictions received "plenty of information" about his

3   registration obligations and, therefore, his due process rights were not violated); see also United States

4   v. Torres, 573 F.Supp.2d 925, 940-45 (holding that actual notice of SORNA's federal registration

5   requirements is not necessary and that knowledge of state reporting requirements is sufficient to

6   comport with the Due Process Clause) (collecting cases).

7        Additionally, since at least February 28, 2007, when the Attorney General promulgated an

8   interim rule applying SORNA to all sex offenders regardless of when they were registered, Morris has

9   had constructive notice that his failure to register after traveling in interstate commerce was a violation

10  of § 2250(a) and a felony.

11       The court finds that Nevada's failure to enact a SORNA compliant registration system prior to

12  the time of Morris's arrest does not preclude his prosecution for failing to register as a sex offender

13  under SORNA.  Sections 16913(a) makes SORNA's registration requirements applicable to all sex

14  offenders regardless of whether a state has implemented a SORNA compliant registration system.  The

15  language of § 2250(a) which imposes an obligation to register "as required by [SORNA]" does not

16  condition the duty to register on a state's implementation of SORNA.  For purposes of this motion,

17  Morris does not dispute that he is a sex offender as defined by SORNA, i.e., that he is an individual

18  who has been convicted of a sex offense or criminal offense that has an element involving a sexual act

19  or sexual contact with another.  See 42 U.S.C. § 16911(1)–(4) and § 16911(5)(A)(i).  Therefore, he was

20  required to comply with § 2250(a) by registering and updating his registration as described in § 16913,

21  which requires a sex offender to "appear in person . . . and inform that jurisdiction of all changes in the

22  information required for that offender in the sex offender registry."  42 U.S.C. § 16913(c).

23       Title 42 U.S.C. 16911 defines a "sex offender registry" as "a registry of sex offenders, and a

24  notification program maintained by a jurisdiction."  Therefore, the "sex offender registry" referred to in

25  § 16913 is the sex offender registry that a jurisdiction maintains, whether or not it complies with

26  SORNA.  The court concludes that § 2250(a) requires a sex offender who travels in interstate

27  commerce to register and update his sex offender registration.  Because every state has had a sex

28  / / /

15

1   offender registry since at least 1996 and because Morris is alleged to have failed to register between

2   July 9, 2008 and August 24, 2008, it was not impossible for Morris to register in Nevada as he claims.

3          In short, the court concurs with the Eighth Circuit and virtually every other United States

4   District Court which has addressed this issue and holds that actual notice of the federal requirement to

5   register under SORNA was not necessary for purposes of the Due Process Clause and that knowledge

6   of state reporting requirements suffices.  Nevada's failure to implement a SORNA compliant

7   registration system prior to Morris's travel in interstate commerce does not preclude his prosecution for

8   failing to register as a sex offender under SORNA, and Morris's prosecution for a violation of §

9   2250(a) does not deprive him of his due process rights to fair notice.

10                    **2.**   **Commerce Clause**

11         The United States Constitution creates a federal government of enumerated powers.  Article I,

12  § 8.  "Every law enacted by Congress must be based on one or more of its powers enumerated in the

13  Constitution."  Morrison, 529 U.S. at 607.  Powers not delegated to the United States by the

14  Constitution are reserved to the states.  U.S. Const. Amend. X.  The Constitution does not grant

15  Congress a plenary police power.  Id.; United States v. Lopez, 514 U.S. 549, 567 (1995).  Rather, the

16  general police power is reserved to the states.  Morrison, 529 U.S. at 607.  However, Article I, § 8, of

17  the Constitution grants Congress the power "to regulate commerce with foreign Nations, among the

18  several States, and with the Indian tribes."  U.S. Const. Art. I, § 8, Cl. 3.

19         Morris argues that the registration requirements of § 16913 of SORNA, which requires sex

20  offenders convicted of state sex offenses to register under SORNA, and 18 U.S.C. § 2250(a), which

21  makes is a federal felony offense to fail to register are "unlawful and unauthorized exercises of

22  Congress' power."  He asserts Congress lacks the authority to direct individuals convicted of purely

23  state offenses to register as sex offenders, pointing out that SORNA creates affirmative duties for sex

24  offenders who have been convicted of state criminal laws even if their offense has no relation to

25  interstate activity or interstate commerce.  He also points out that the registration requirements of

26  SORNA are directed to individuals, not the states.  Because Congress lacks the authority to direct

27  individuals convicted of purely state offenses to register as sex offenders under SORNA, and because a

28  defendant may not be prosecuted for a violation of § 2250(a) unless he is first required to register under

16

1   SORNA, Morris contends § 2250(a) is an unconstitutional exercise of Congress' Commerce Clause

2   power.

3           The government responds that § 2250 is a valid exercise of Congress' Commerce Clause

4   authority because the statute regulates interstate travel and also regulates activities that substantially

5   affect interstate commerce.  Both sides rely heavily on the two most recent Supreme Court opinions

6   striking down statutes under the Commerce Clause – Lopez, 514 U.S. 549, and Morrison, 529 U.S. 598.

7           In Lopez, the Supreme Court held that the Gun-Free School Zones Act of 1990, 18 U.S.C.

8   § 922(q), which made it a federal offense for any individual to knowingly possess a firearm in a school

9   zone, exceeded Congress' Commerce Clause authority.  The Lopez decision emphasized the nature of

10  our federal system of government which limits the power of the federal government to those

11  enumerated in the Constitution and reserves all other powers to the states.  The court noted that

12  beginning in the mid-1930s, modern era Commerce Clause jurisprudence "greatly expanded the

13  previously defined authority of Congress under that Clause."  514 U.S. at 556.  Lopez summarized

14  Commerce Clause cases in which the Supreme Court identified three broad categories of activity that

15  Congress may regulate under its commerce power.  Congress may exercise its authority under the

16  Commerce Clause by regulating: (1) "the use of the channels of interstate commerce;" (2) "the

17  instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the

18  threat may come only from intrastate activities;" and (3) "activities that substantially affect interstate

19  commerce."  Id. at 558-559.

20          Lopez held that the Gun-Free School Zones Act of 1990: (1) did not regulate the use of the

21  channels of interstate commerce, (2) was not an attempt to prohibit the transportation of a commodity

22  through the channels of interstate commerce, and (3) was not a regulation in which Congress sought to

23  protect an instrumentality of interstate commerce.  Id. at 559.  The Court found the statute had nothing

24  to do with commerce, and it contained no jurisdictional element to ensure, through a case-by-case

25  inquiry, that the firearm possession in question affects interstate commerce.  Id. at 560-61.  The Court

26  rejected the government's argument that possession of a firearm in a school zone may result in violent

27  crime and that violent crime can be expected to affect the functioning of the national economy.  The

28  government reasoned that because the "costs of crime" has a national effect on the economy, Congress

1    could regulate not only all violent crime, but all activities that might lead to violent crime under its

2    Commerce Clause authority.  The Supreme Court noted that under this reasoning, "it is difficult to

3    perceive any limitation on federal power, even in areas such as criminal law enforcement or education

4    where States historically have been sovereign." Id. at 564.  The Court concluded that to uphold the

5    government's position would essentially "convert congressional authority under the Commerce Clause

6    to a general police power of the sort retained by the states." Id. at 567.

7          In Morrison, the Supreme Court held that § 13981 of the Violence Against Women Act

8    of 1994, which provided a federal civil remedy for victims of gender-motivated violence, was an

9    unconstitutional exercise of Congress' Commerce Clause power.  Relying on its earlier discussion in

10   Lopez, and acknowledging that modern Commerce Clause jurisprudence has expanded, the Court

11   nevertheless found Congress was not regulating any of the three broad categories of activity necessary

12   to the exercise of its Commerce Clause authority.  The court again rejected the notion that Congress

13   may regulate non-economic, violent criminal conduct based only on its aggregate effect on interstate

14   commerce, finding "the Constitution requires a distinction between what is truly national and what is

15   truly local." Id. at 617.  "The regulation and punishment of intrastate violence that is not directed at the

16   instrumentalities, channels, or goods involved in interstate commerce has always been the province of

17   the States." Id. at 618.

18         Morris argues that the registration requirements of § 16913 of SORNA and § 2250(a) violate the

19   Commerce Clause.  With respect to § 16913, Morris argues that SORNA's registration requirements

20   that persons convicted of state sex offenses register and keep their registration current exceed Congress'

21   Commerce Clause power because they do not regulate the channels of interstate commerce, the

22   instrumentalities of interstate commerce, or activities that substantially affect interstate commerce.  The

23   government does not address Morris's arguments with respect to the registration requirements of

24   § 16913, but focuses its arguments on the constitutionality of § 2250(a), which the government argues

25   regulates persons who travel in interstate commerce and activities that substantially affect interstate

26   commerce.

27         Several Courts of Appeals to have decided a defendant's Commerce Clause challenge to

28   SORNA, and unanimously, all have rejected such challenges.  See, e.g., May, 535 F.3d at 921-22;

18

1   Hinkley, 2008 U.S. App. LEXIS 24989 at *37;  Dixon, 2008 U.S. App. LEXIS 26820 at * 8-9; United

2   States v. Howell, 2009 U.S. App. LEXIS 541 at *8 (8th Cir. Jan. 13, 2009).  In May, 535 F.3d at 921-

3   22, the Eighth Circuit held that for a defendant to be convicted of failing to register under § 2250, the

4   government must prove he traveled in interstate or foreign commerce and thereafter failed to register as

5   required by SORNA.  The Court of Appeals concluded that Congress had the power to enact SORNA

6   under each of the three prongs of the Lopez test, although it is "more easily supported by the first and

7   second Lopez prongs."  The court distinguished both Morrison and Lopez because neither act contained

8   a jurisdictional "hook," finding that SORNA had an express and clear jurisdictional element because it

9   required proof that the defendant traveled in interstate commerce or foreign commerce and thereafter

10  failed to register as required by SORNA.  May, 535 F.3d at 921-22.

11       Similarly, in Hinkley, the Tenth Circuit held that because Congress required a sex offender first

12  travel in interstate congress before finding a registration violation, SORNA was an appropriate use of

13  Congress' power under the Commerce Clause.  The Tenth Circuit did not believe that analysis under

14  the third Lopez prong was necessary because "[the defendant's] travel across state lines...falls under the

15  first or second of the Lopez prong, [and therefore,] whether such activity has a substantial effect on

16  interstate commerce is irrelevant."  2008 U.S. Dist, LEXIS 24989 at * 38-39.

17       Additionally, the overwhelming majority of district courts have held that SORNA is a valid

18  exercise of Congress' Commerce Clause power because it regulates persons in interstate commerce.

19  Hinen, 487 F. Supp. 2d 747; United States v. Madera, 474 F. Supp.2d 1257 (M.D. Fla. 2007), rev'd on

20  other grounds, 528 F.3d 852 (11th Cir. 2008); United States v. Kelton, No. 5:07-cr-030-Oc-10GRJ,

21  2007 WL 2572204 (M.D. Fla. 2007); United States v. Sawn, No. 5:07-cr-020, 2007 WL 2344980

22  (W.D. Va. 2007); United States v. Gonzales, No. 5:07-cf-27-RJ, 2007 WL 2298004 (N.D. Fla. 2007);

23  United States v. Mason, 510 F.Supp.2d 923 (M.D. Fla. 2007); United States v. Templeton, No. 06-291,

24  2007 WL 445481 (W.D. Okla. 2007); Lovejoy, 516 F. Supp. 2d 1032; Ditomasso, 552 F. Supp. 2d 233;

25  United States v. Howell, No. cr-07-2023-MWB, 2007 WL 3302547 (N.D. Iowa 2007), report and

26  recommendation adopted in part, rejected in part, 2008 WL 313200; Gould, 526 F. Supp. 2d 538;

27  United States v. Tonj, No. cr-08-20RAW, 2008 WL 2186205 (E.D. Okla. 2008); United States v.

28  David, No. 1:08-CR-11, 2008 WL 2045830 (W.D.N.C. 2008); United States v. Zuniga, 2008 WL

1   2184118 (D. Neb. 2008); <u>United States v. Cochran</u>, No. cr-08-18-RAW, 2008 WL 2185427 (E.D. Okla.

2   2008); <u>United States v. Utesch</u>, 2008 WL 656066 (E.D. Tenn. 2008); <u>United States v. Akers</u>, 2008 WL

3   914493 (N.D. Ind. 2008); <u>United States v. Nugent</u>, 2008 WL 413273 (W.D. Mo. 2008); <u>United States

4   v. Shenandoah</u>, 572 F.Supp.2d 566 (M.D. Pa. 2008); <u>Torres</u>, 573 F. Supp. 2d 925, 940; <u>Hann</u>, 573 F.

5   Supp. 2d 827, 835.  This list of district court cases is not exhaustive.

6        Morris argues that the government cannot establish the first element of a § 2250(a) violation,

7   <i>i.e.</i>, that he was required to register under SORNA because Congress lacks the power under the

8   Commerce Clause to impose registration requirements on individuals who are convicted of purely

9   intrastate offenses.  Morris also argues that SORNA's registration provision, § 16913, is a an invalid

10  exercise of Commerce Clause power because Congress cannot require individuals who are convicted of

11  purely state law offenses to register under SORNA.  Four district court cases have held that Congress

12  exceeded its Commerce Clause authority in enacting § 16913, the registration provision of SORNA.

13  <u>Waybright</u>, 561 F. Supp. 2d at 1162-68; <u>Powers</u>, 544 F. Supp. 2d at 1333-36; <u>Thomas</u>, 534 F. Supp. 2d

14  at 917-22; <u>United States v. Myers</u>, 2008 WL 5156671, __ F.Supp.2d __ (S.D. Fla. Dec. 9. 2008).

15  However, each of these decisions analyzed the registration provisions of § 16913 and criminal penalty

16  provision of § 2250(a) of SORNA separately.  Moreover, each analyzed SORNA under the first two

17  prongs of <u>Lopez</u> and found SORNA unconstitutional because there was no relationship between the

18  interstate travel and the regulated activity.  The majority of courts have rejected this approach, finding

19  that both § 16913 and § 2250(a) are interrelated parts of the same Act.  <u>Shenandoah</u>, 572 F.Supp.2d at

20  575 (holding the provisions of § 16913 and § 2250 "are components of a symbiotic statutory scheme in

21  which there is no criminal penalty unless there is a failure to register, and conversely, a failure to

22  register cannot be enforced without a criminal penalty"); <u>Hann</u>, 573 F. Supp. 2d 925 (holding § 16913

23  and § 2250 should be treated as "interrelated components of the larger whole of SORNA sufficient to

24  overcome any deficiencies when viewing § 16913 in isolation."); <u>Vardaro</u>, 575 F. Supp. 2d 1179, 1185;

25  <u>Shenandoah</u>, 575 F. Supp. 2d at 576 (finding congressional intent underlying SORNA was to protect

26  public safety by creating a mechanism for tracking sex offenders as they move from state to state and

27  that prosecution under § 2250 does not reach purely intrastate movement of sex offenders who fail to

28  comply with registration requirements); <u>Hinen</u>, 487 F.Supp.2d at 757-58 (holding federal jurisdiction

1  for violating § 2250 only occurs when a person required to register under SORNA travels in interstate
2  commerce).

3        Additionally, a number of cases have held that § 16913 is an appropriate exercise of Congress'
4  power under the Necessary and Proper Clause. Thomas, 534 F.Supp.2d at 921 (concluding that
5  § 16913 is an appropriate and reasonably adapted means by Congress to attain the legitimate end of
6  § 2250, *i.e.*, monitoring sex offenders who cross state lines); Torres, 573 F.Supp.2d at 940 (W.D. Tex.
7  2008) (holding § 16913 is a valid exercise of authority under the Necessary and Proper Clause);
8  Vardaro, 572 F.Supp.2d at 576.

9        In short, the court concurs with the overwhelming majority of cases which have held that
10 SORNA is a valid exercise of Congress' Commerce Clause power. Section 2250(a)(2)(B) regulates
11 persons who travel in interstate commerce and fail to register. Although Congress has encouraged
12 states to enact SORNA compliant registration provisions, § 2250(a)(2)(B) is expressly limited to
13 prosecuting those individuals who have traveled in interstate commerce. As such, prosecution under
14 § 2250(a)(2)(B) does not criminalize purely intrastate movement of sex offenders who fail to comply
15 with SORNA's registration requirements. SORNA contains an express jurisdictional element that
16 limits prosecutions to those who fail to register after traveling in interstate commerce. Under the
17 second prong of the Lopez test, Congress may regulate persons who move in interstate commerce "even
18 though the threat may come from only intrastate activities." 514 U.S. at 558. There is no constitutional
19 requirement under the second prong of the Lopez test that the person who travels in interstate
20 commerce must travel with the intent of violating a specific statute. Torres, 573 F.Supp.2d at 940;
21 Ditomasso, 552 F.Supp.2d 243. As the Ditomasso court found, "SORNA, including the criminal
22 component, prevents sex offenders from being lost in the cracks *between* state regulation, a matter
23 which is beyond the power of any one state to comprehensively address." Id. (emphasis in original).
24 See also Vardaro, 575 F. Supp. 2d 1185 ("the threat posed by sex offenders traveling in interstate
25 commerce is precisely the type of peril that Congress may address utilizing the Commerce Clause").
26 / / /
27 / / /
28 / / /

21

1

                **3.**       ***Ex Post Facto* Clause**

2

                   **SORNA's Registration Requirements**

3         Article I, § 9 of the Constitution prohibits the passage of *Ex Post Facto* laws.  "'[A]ny statute

4 which punishes as a crime an act previously committed, which was innocent when done; which makes

5 more burdensome the punishment for a crime, after its commission, or which deprives one charged with

6 crime of any defense available according to law at the time when the act was committed, is prohibited

7 as *ex post facto*.'"  Collins v. Youngblood, 497 U.S. 37, 42 (1990) (quoting Beazell v. Ohio, 269 U.S.

8 167, 169-70 (1925)).  "[T]he constitutional prohibition on ex post facto laws applies only to penal

9 statutes which disadvantage the offender affected by them."  Collins, 497 U.S. at 41 (citations omitted).

10 To determine whether a law violates the *Ex Post Facto* Clause, the court applies a two-step test.  The

11 court must first decide whether the intent of the legislature in enacting the statute was to impose

12 punishment.  Doe v. Smith, 538 U.S. at 92.  If so, the court's analysis ends because retroactive

13 application of a statute violates the *Ex Post Facto* Clause.  Id.  However, if the intent of the legislature

14 was to enact a nonpunitive and civil regulatory scheme, the court conducts the second step of the

15 analysis and decides whether the statute is so punitive either in purpose or effect as to negate the

16 legislature's intention to make it civil.  Id.  As the Supreme Court explained, "Because we ordinarily

17 defer to the legislature's stated intent, only the clearest proof will suffice to override legislative intent

18 and transform what has been denominated a civil remedy into a criminal penalty."  Id. (internal citations

19 and quotations omitted.)

20         Morris contends SORNA violates the *Ex Post Facto* Clause because the statute's in-person

21 reporting requirements are punitive, and its categorical monitoring mechanisms are excessive compared

22 to the stated objective of public safety.  The government claims SORNA is a non-punitive civil

23 regulatory scheme similar to the sex offender registration system the Supreme Court upheld Smith v.

24 Doe.  The government also argues the in-person reporting requirements promote the statutory objective

25 of maintaining current and accurate information on sex offenders.  Finally, the government asserts

26 SORNA does not punish or increase punishment of an act committed before SORNA's enactment or

27 deprive Morris of a defense previously available.

28 / / /

1    In Doe v. Smith, the Supreme Court held that courts analyzing whether sex offender registration

2    statutes violate the *Ex Post Facto* Clause should refer to the seven factor test set forth in the court's

3    prior decision in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963). Those factors are:

4    (1) whether the sanction involves an affirmative disability or restraint; (2) whether the sanction has

5    historically been regarded as punishment; (3) whether the sanction comes into play only on a finding of

6    *scienter*; (4) whether the sanction's operation will promote the traditional aims of punishment –

7    retribution and deterrence; (5) whether the behavior to which the sanction applies is already a crime;

8    (6) whether an alternative purpose to which the sanction rationally may be connected is assignable to it;

9    and (7) whether the sanction appears excessive in relation to the alternative purpose assigned. Id. at

10   168-69. Analyzing each of these factors, the Supreme Court held that Alaska's Sex Offender

11   Registration Act did not violate the *Ex Post Facto* Clause of the Constitution. Of the seven Mendoza-

12   Martinez factors,

13         The factors most relevant to our analysis are whether, in its necessary
           operation, the regulatory scheme: has been regarded in our history and
14         tradition as punishment; imposes an affirmative disability or restraint;
           promotes the traditional aims of punishment; has a rational connection to a
15         nonpunitive purpose; or is excessive with respect to this purpose.

16   Virtually every court to have addressed a defendant's *ex post facto* challenge to SORNA has

17   held that SORNA does not violate the *Ex Post Facto* Clause of the Constitution. May, 535 F.3d at

18   919-20; Hinkley, 2008 U.S. App. LEXIS at *26; Mason, 510 F.Supp.2d at 929-30; United States v.

19   Gill, 520 F.Supp.2d 1341, 1344-46; Hinen, 487 F.Supp.2d at 755-57; Samuels, 543 F.Supp.2d at 676-

20   77; Ditomasso, 552 F.Supp.2d 233; United States v. Senogles, 570 F. Supp. 2d at 1152-55; Torres, 573

21   F.Supp.2d at 950 (W.D. Tex. 2008); Shenandoah, 572 F.Supp.2d 566. But see Dixon, 2008 U.S. App.

22   LEXIS at 26820 * 11 (finding no violation where defendant traveled after SORNA enacted and given

23   reasonable time (here, five months) to register, but violation occurred regarding second defendant who

24   was not given reasonable time to register before he was indicted for failure to register).

25   This court agrees that SORNA does not violate the *Ex Post Facto* Clause. First, Congress'

26   stated intent in enacting SORNA was regulatory rather than punitive. Congress stated that its purpose

27   was to "protect the public from sex offenders and offenders against children, and in response to the

28   vicious attacks by violent predators." 42 U.S.C. § 16901. To accomplish this purpose, Congress

23

1   established a comprehensive national system for regulation of sex offenders.  As the Eighth Circuit has

2   concluded, "SORNA's registration requirement demonstrates no congressional intent to punish sex

3   offenders.  Congress describes SORNA as a public safety measure."  May, 535 F.3d at 920 (citing

4   § 16901).  Additionally, except for the criminal provision contained in § 2250, the entire statute is

5   codified within Title 42 of the United States Code, which is devoted to "Public Health and Welfare,"

6   which is additional evidence of Congress' intent to create a civil regulatory statute.  Moreover, as the

7   Supreme Court noted in Doe v. Smith, "[I]mposition of restrictive measures on sex offenders adjudged

8   to be dangerous is a legitimate nonpunitive governmental objective and has been historically so

9   regarded."  538 U.S. at 93 (internal quotations omitted).  Thus, it is clear that Congress intended

10  SORNA to be a civil regulatory scheme to protect the public from sex offenders and offenders against

11  children.

12          Turning to the second prong of the framework established by the Supreme Court in Doe v.

13  Smith, the court also concludes that SORNA's statutory scheme is not so punitive either in its purpose

14  or effect as to negate Congress' intention to deem it civil.  Morris focuses on SORNA's in-person

15  reporting requirements because the Supreme Court in Doe v. Smith reversed the Ninth Circuit based in

16  part on the Court of Appeals' mistaken belief that the Alaska statute required in-person updates.  The

17  Ninth Circuit had pointed to numerous elements of the Alaska statute – the apparent in-person

18  requirements, the disclosure of a wide variety of personal information, the publishing of the offender's

19  information on the internet, and the impact on an offender's ability to obtain employment – to conclude

20  that the Alaska statute imposed an affirmative disability on sex offenders.  In reversing the Ninth

21  Circuit, the Supreme Court found that the Alaska statute did not require in-person reporting and that the

22  other aspects of the statute did not impose an affirmative disability.  Morris seems to argue that the

23  Ninth Circuit's decision in Doe v. Smith is still good law on the issue of whether an in-person reporting

24  requirement of a sex offender registration statute constitutes an affirmative disability for purposes of *ex*

25  *post facto* analysis.  However, in Hatton v. Bonner, 356 F.3d 955, 964 (9th Cir. 2004), the Ninth Circuit

26  held that California Penal Code § 290, California's sex offender registration statute, did not violate the

27  *Ex Post Facto* Clause.  Applying the seven factor Mendoza-Martinez test, the court found that the in-

28  / / /

24

1   person registration requirement was not enough, in it self, to turn § 290 into an affirmative disability or

2   restraint. Id.

3          The in-person reporting requirements of SORNA do not make § 16913 punitive in purpose or

4   effect.  Rather, SORNA's in-person reporting requirements, which require sex offenders to provide

5   detailed personal information and appear in person so that the jurisdiction can take a current photograph

6   and verify reportable information, accomplish the statute's purpose of establishing a comprehensive

7   national system for registration.  These requirements do not impose an affirmative restraint on sex

8   offenders' activities.  SORNA's registration requirements do not prevent sex offenders from traveling

9   in interstate commerce, changing residences, or changing their appearance.

10         Morris also claims SORNA's categorical monitoring mechanisms are excessive compared to the

11  stated objective of public safety.  However, the Supreme Court in Doe v. Smith rejected the same

12  argument:

13         The *Ex Post Facto* Clause does not preclude a State from making reasonable
           categorical judgments that conviction of specified crimes should entail
14         particular regulatory consequences.  We have upheld against ex post facto
           challenges laws imposing regulatory burdens on individuals convicted of
15         crimes without any corresponding risk assessment. The State's determination
           to legislate with respect to convicted sex offenders as a class, rather than
16         require individual determination of their dangerousness, does not make the
           statute a punishment under the *Ex Post Facto* Clause.

17

18  538 U.S. at 103-104.  The Supreme Court held that Alaska's categorical classification of sex offenders

19  was justified considering the "grave concerns over the high rate of recidivism among convicted sex

20  offenders and their dangerousness as a class." Id. at 103.

21         Morris argues that his prosecution under § 2250 violates the *Ex Post Facto* Clause because the

22  penalties under § 2250 (up to ten years in prison) are greater than the state penalties (up to four years in

23  Nevada) and the federal penalties (up to one year under the Wetterling Act) which were in effect at the

24  time of his conduct.  However, § 2250(a)(2)(B) only punishes convicted sex offenders who travel in

25  interstate commerce after the enactment of SORNA and who fail to register or update registration as

26  required by SORNA.  Section 2250 does not impose additional punishment for Morris's underlying sex

27  offense.  Rather, SORNA creates a new punishment for a new offense of failing to register as a sex

28  offender under SORNA after July 27, 2006 when SORNA became effective.  See LeTourneau, 534

25

1    F.Supp.2d at 720-22 ("SORNA does not punish a defendant for the sexual offense committed prior to

2    the enactment of SORNA, but rather traveling in interstate commerce and failing to register after

3    SORNA became effective." ); Gould, 526 F.Supp.2d at 548-49 ("[O]nly upon an offender's failure to

4    register under SORNA, a new offense, do the enhanced penalties apply."); Shenandoah, 572 F.Supp.2d

5    at 569 ("SORNA does not impose an additional punishment for a predicate sex offense.  Instead,

6    SORNA works prospectively creating a new punishment for a new offense, *i.e.*, failing to register as a

7    sex offender under SORNA after July 27, 2006.") (internal citations and quotations omitted).

8         In summary, the court concludes that because Congress' intent was to create a civil regulatory

9    scheme and because SORNA's purpose and effects are nonpunitive, the statute does not violate the *Ex*

10   *Post Facto* Clause.

11              **4.    Retroactivity**

12        Morris claims § 2250 is impermissibly retroactive because Congress did not properly designate

13   § 2250 as retroactive.  The government asserts that SORNA is similar to the retroactive registration

14   system in Alaska that the Supreme Court upheld in Smith v. Doe.  There is split of authority concerning

15   whether a sex offender who traveled in interstate commerce during the "gap" between the effective date

16   of SORNA and the interim Attorney General's rule applying SORNA retroactively violates the *Ex Post*

17   *Facto* Clause.  Some courts have held that it would violate the *Ex Post Facto* Clause of the Constitution

18   to prosecute a defendant who traveled in interstate commerce during the gap between SORNA's

19   enactment and the Attorney General's interim rule.  See, e.g., Madera, 528 F.3d 852; Natividad-Garcia,

20   560 F.Supp.2d at 565.  Other courts have rejected the arguments that the *Ex Post Facto* Clause prohibits

21   prosecution of a defendant who travels in interstate commerce during the "gap," reasoning sex

22   offenders were required to register under SORNA when SORNA came into effect on July 27, 2006.

23   See, e.g., May, 535 F.3d 912; Ditomasso, 552 F.Supp.2d 233.

24        The indictment in this case alleges that Morris traveled in interstate commerce and knowingly

25   failed to register and update his registration between July 9, 2008 and July 31, 2008.  The court finds

26   the reasoning of the Eighth Circuit, and those courts which have held that SORNA's registration

27   requirements apply to all sex offenders, as defined by the Act regardless of when they were convicted,

28   persuasive.  However, because the indictment alleges a violation of § 2250 occurred well after

26

1   enactment of SORNA, and also well after the enactment of the Attorney General's interim rule, Morris

2   has not satisfied his heavy burden of showing that "no set of circumstances exist under which the Act

3   would be valid." Morrison, 529 U.S. at 608.

### 5.   Non-Delegation Doctrine

5        Morris also argues SORNA violates the non-delegation doctrine by delegating legislative

6   authority to the Attorney General.  He claims 42 U.S.C. § 16913(d) gives the Attorney General the

7   legislative authority to determine the applicability of SORNA to all sex offenders convicted before

8   its enactment.  Citing Hinen, 487 F.Supp.2d at 753, the government argues that § 16913(d) only gives

9   the Attorney General the authority to determine the statute's applicability to individuals who are

10  classified as sex offenders under SORNA who are unable to register in the jurisdiction where they

11  reside, work, or study.  The government also urges the court to adopt the view of the district court in

12  Madera, which held that SORNA merely gives the Attorney General an advisory role to the courts, with

13  the courts ultimately determining the retroactive reach of SORNA.  474 F.Supp.2d at 1261.  However,

14  the Eleventh Circuit reversed the District Judge, finding he "clearly erred by usurping the role of the

15  Attorney General in preemptively determining SORNA's retroactive application."  Madera, 528 F.3d at

16  857.

17       Under the non-delegation doctrine,  "Congress may not constitutionally delegate its legislative

18  power to another branch of Government."  Touby v. United States, 500 U.S. 160, 165 (1991).  "The

19  nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite

20  system of Government."  Id. (internal quotations omitted).  However, Congress may seek assistance

21  from other branches:

22           We have long recognized that the nondelegation doctrine does not prevent
             Congress from seeking assistance, within proper limits, from its coordinate
23           Branches.  Thus, Congress does not violate the Constitution merely because
             it legislates in broad terms, leaving a certain degree of discretion to
24           executive or judicial actors.  So long as Congress lay[s] down by legislative
             act an intelligible principle to which the person or body authorized to [act]
25           is directed to conform, such legislative action is not a forbidden delegation
             of legislative power.
26

27  Touby, 500 U.S. at 165 (internal quotations omitted).  In the past eighty years, the Supreme Court has

28  only found that Congress impermissibly delegated its legislative authority in two cases, both related to

27

1  provisions in the National Industrial Recovery Act ("NIRA").  See Panama Refining Co. v. Ryan,

2  293 U.S. 388 (1935); A.L.A. Schechter Poultry Corp. v. United States, 295 U.S. 495 (1935).

3       Consistent with virtually every other court to address this issue, the court finds that Congress

4  did not unconstitutionally delegate its legislative powers to the Attorney General, and that SORNA does

5  not violate the non-delegation doctrine.  See, e.g., Torres, 573 F.Supp.2d 925, 949 (W.D. Tex. 2008);

6  LeTourneau, 534 F.Supp.2d at 724-25; Gould, 526 F.Supp.2d at 545-46 (collecting cases); Hinen,

7  487 F.Supp.2d at 751-53; United States v. Romeo, 2009 U.S. Dist. LEXIS 3522 at *15 (Jan. 20, 2009);

8  Contreras, 2008 U.S. Dist. LEXIS at *21; Summers, 2008 U.S. Dist LEXIS 101456 at *11; Lamere,

9  2008 U.S. Dist. LEXIS 101116 at *11; Morris, 2008 U.S. Dist. LEXIS 104029 at *28-32; Keleher,

10  2008 U.S. Dist. LEXIS 105532 at *35-46.  The court finds that Congress provided an intelligible

11  principle to guide the Attorney General.  Section 16913 allows the Attorney General to determine the

12  applicability of SORNA to sex offenders convicted before its implementation on July 27, 2006 and to

13  prescribe rules for sex offenders who are unable to initially register.  Congress set forth all of SORNA's

14  substantive registration requirements in §§ 16911 et seq., and § 16913(d) merely gives the Attorney

15  General the authority to specify the applicability of SORNA to a certain class of individuals.[1]  The

16  Attorney General's discretion in this regard is constrained by the principles expressed in SORNA,

17  which seeks to create a comprehensive national system for the registration of sex offenders.  Moreover,

18  the applicability of SORNA to the class of individuals described in § 16913(d) is ultimately determined

19  by the courts.  Thus, SORNA does not violate the non-delegation doctrine.

20       **6.    Administrative Procedure Act**

21       Morris contends the Attorney General's interim rule violates the Administrative Procedure Act

22  ("APA") because the rule was promulgated without notice and comment procedures, and no exception

23

24       [1]  Courts are split concerning whether § 16913(d) only delegates to the Attorney General

25  authority to regulate initial registration or registration in general for sex offenders convicted prior to
SORNA.  Some courts have held that Subsection (d) only refers to initial registration.  See, e.g.,

26  Mason, 510 F.Supp.2d at 928; Hinen, 487 F.Supp.2d at 750-51.  Other courts hold that SORNA does not

27  apply to sex offenders convicted before the Attorney General issued his interim rule on February 28,
2007.  See, e.g., United States v. Smith, 528 F. Supp. 2d 615, 618 (S.D.W. Va. 2007); United States v.

28  Kapp, 487 F. Supp. 2d 536, 542 (M.D. Pa. 2007).

1   applies.  According to Morris, no good cause exists to waive notice and comment under 5 U.S.C.

2   § 553(b) because notice and comment procedures were not "impracticable, unnecessary, or contrary to

3   the public interest," 5 U.S.C. §553(b)(3)(B), and the rule did not confer a benefit to allow delaying

4   implementation of the rule under § 553(d).  In response, the government argues the Attorney General

5   complied with the APA by incorporating into the interim rule a finding that notice and comment

6   procedures would be contrary to the public interest because the interim regulation eliminated

7   uncertainty about the applicability of SORNA's requirements and protected the public against sex

8   offenders.

9          The court finds that the Attorney General has properly invoked the good cause exception to

10   notice and comment rulemaking.  Under the APA, notice and comment procedures are required before

11   promulgating a rule unless an exception applies.  5 U.S.C. § 553.  A finding of good cause is an

12   exception to the Notice and comment requirements of the APA:

13          (B)   when the agency for good cause finds (and incorporates the finding
                 and a brief statement of reasons therefor in the rules issued) that
14               notice and public procedure thereon are impracticable, unnecessary,
                 or contrary to the public interest.

15   5 U.S.C. § 553(b)(B).

16          Under 5 U.S.C. § 553(d),

17          (d)   The required publication or service of a substantive rule shall be
                 made not less than 30 days before its effective date, except–
18
            (1)   a substantive rule which grants or recognizes an
19               exemption or relieves a restriction;

20          (2)   interpretative rules and statements of policy; or

21          (3)   as otherwise provided by the agency for good cause found
                 and published with the rule.

22   Id.

23          "[T]he good cause exception should be interpreted narrowly . . . so that the exception will not

24   swallow the rule."  Buschmann v. Schweiker, 676 F.2d 352, 357 (9th Cir. 1982) (citations omitted).

25   The court's inquiry into whether the good cause exception was properly invoked "proceeds case-by-

26   case, sensitive to the totality of the factors at play, and . . . notice and comment procedures should be

27   waived only when 'delay would do real harm.'"  Natural Resources Def. Council, Inc. v. Evans,

28   316 F.3d 904, 911 (9th Cir. 2002) (citations omitted) (quoting Hawaii Helicopter Operators Ass'n v.

1    Fed. Aviation Admin., 51 F.3d 212, 214 (9th Cir. 1995)).  While emergencies are not the only situations

2    constituting good cause, they are the most common.  Id.  "Notice and comment is 'impracticable' when

3    the agency cannot both follow section 553 and execute its statutory duties . . . [and] 'unnecessary' when

4    the regulation is technical or minor."  Riverbend Farms, Inc. v. Madigan, 958 F.2d 1479, 1484 (9th Cir.

5    1992) (internal quotations omitted).  "Furthermore, 'contrary to the public interest' supplements these

6    terms and requires that public rule-making procedures shall not prevent an agency from operating."  Id.

7    (internal quotations omitted).  For example, in Hawaii Helicopters, the Ninth Circuit held that the

8    Federal Aviation Administration ("FAA") had good cause to forego notice and comment procedures

9    regarding its special operating rules for airplane and helicopter tour operators in Hawaii, because of the

10   threat to public safety posed by increasing helicopter air tour accidents.  Id. at 214.

11          The Attorney General included the following statement of good cause for the interim rule:

12              The rule specifies that the requirements of the Sex Offender Registration and
             Notification Act apply to all sex offenders (as defined in that Act), including
13           those convicted of the offense for which registration is required prior to the
             enactment of the Act.  The applicability of the Act's requirements promotes
14           the effective tracking of sex offenders following their release, by means
             described in sections 112-17 and 119 of the Act, and the availability of
15           information concerning their identities and locations to law enforcement and
             members of the public, by means described in sections 118 and 121 of the
16           Act.

17              The immediate effectiveness of this rule is necessary to eliminate any
             possible uncertainty about the applicability of the Act's requirements--and
18           related means of enforcement, including criminal liability under 18 U.S.C.
             [§] 2250 for sex offenders who knowingly fail to register as required--to sex
19           offenders whose predicate convictions predate the enactment of SORNA.
             Delay in the implementation of this rule would impede the effective
20           registration of such sex offenders and would impair immediate efforts to
             protect the public from sex offenders who fail to register through
21           prosecution and the imposition of criminal sanctions.  The resulting practical
             dangers include the commission of additional sexual assaults and child
22           sexual abuse or exploitation offenses by sex offenders that could have been
             prevented had local authorities and the community been aware of their
23           presence, in addition to greater difficulty in apprehending perpetrators who
             have not been registered and tracked as provided by SORNA.  This would
24           thwart the legislative objective of "protect[ing] the public from sex offenders
             and offenders against children" by establishing "a comprehensive national
25           system for the registration of those offenders," SORNA § 102, because a
             substantial class of sex offenders could evade the Act's registration
26           requirements and enforcement mechanisms during the pendency of a
             proposed rule and delay in the effectiveness of a final rule.
27
                It would accordingly be contrary to the public interest to adopt this rule with
28           the prior notice and comment period normally required under 5 U.S.C. [§]

                                        30

1    553(b) or with the delayed effective date normally required under 5 U.S.C.
     [§] 553(d).

2

3    72 Fed. Reg. 8894, 8896-8897 (codified in 28 C.F.R. Part 72).

4         Here, the Attorney General's statement provides substantial justification for promulgating the

5    interim rule without notice and comment procedures.  The court could not find a case which has held

6    that the Attorney General violated the APA by his decision to promulgate SORNA regulations without

7    prior public notice or comment.  As one district court observed:

8              [T]he Attorney General has gone to great lengths to proffer an appropriate
               rationale for its decision to set aside the notice and comment requirements.
9              . . . Indeed, it would be difficult to conjure up more compelling reasons than
               protecting the public from sex offenders and preventing "additional sexual
10             assaults and child sexual abuse or exploitation offenses" to invoke the good
               cause exception.

11

12   Shenandoah,572 F.Supp.2d at 574; see also Gould, 526 F.Supp.2d at 546; Senogles, 570 F.Supp.2d at

13   1151-52; Torres, 573 F. Supp. 2d at 945. The Attorney General did not violate the APA by

14   promulgating the interim rule without prior notice or comment.

15        **7.    Tenth Amendment**

16        Morris asserts § 2250 is an improper exercise of federal power over the states in violation of the

17   Tenth Amendment.  Morris acknowledges that states are not required to implement SORNA under the

18   statute, because SORNA only offers states financial incentives to adopt SORNA-compliant registries.

19   However, if this court finds that SORNA's registration requirements are currently in effect, Morris

20   argues that state officials would be forced to register sex offenders pursuant to SORNA before their

21   states had enacted SORNA registration systems, which would violate the Tenth Amendment.  The

22   government claims § 2250 does not compel *states* to adopt registration systems in compliance with

23   SORNA, but only requires *sex offenders* to register and update their registration when they travel in

24   interstate commerce.  According to the government, SORNA does not impose any additional

25   obligations on sex offenders, such as Morris, who are already required to register in their states, nor

26   does SORNA require states to do anything more than what each state already does under its current sex

27   offender registration laws.

28   / / /

                                           31

The Tenth Amendment to the U.S. Constitution reserves all powers not delegated to the federal government to the states and precludes the federal government from compelling the states or state officials to enact or administer federal law.  <u>Printz v. United States</u>, 521 U.S. 898, 935 (1997).  SORNA does not require states to implement SORNA compliant registry systems.  Rather, it offers the states financial incentives to create them.  42 U.S.C. §§ 16924, 16925(d).  It is clear that Congress did not violate the Tenth Amendment by giving states financial incentives to bring their individual sex offender registration systems in compliance with SORNA's registration requirements.  <u>See</u> <u>Waybright</u>, 561 F.Supp.2d at 1168-69 (<u>citing</u> <u>South Dakota v. Dole</u>, 483 U.S. 203 (1987) (discussing Congress' spending power)); <u>Vadaro</u>, 575 F.Supp.2d at 1185; <u>Gagnon</u>, 574 F.Supp.2d 172, 197.  Moreover, a number of courts have held that a sex offender who is required to register under state law has no standing to raise a Tenth Amendment claim.  <u>See</u> <u>Waybright</u>, 561 F.Supp.2d at 1168-69 (finding the defendant did not have standing to assert a Tenth Amendment claim because he had "not suffered any injury as a result of Congress' alleged commandeering of state officials." ); <u>accord</u> <u>Vardaro</u>, 572 F.Supp.2d at 570; <u>Gagnon</u>, 574 F.Supp.2d at 179.

### 8.   <u>Right to Travel</u>

Morris claims § 2250 burdens his constitutional right to interstate travel without a compelling state interest because the statute subjects sex offenders to federal prosecution for exercising their right to travel and failing to register or update their registration.  The government responds that several courts have rejected similar challenges to sex offender registration laws based on the right to travel, including <u>Doe v. Smith</u>, 538 U.S. 84; <u>Doe v. Miller</u>, 405 F.3d 700 (8th Cir. 2005); <u>Doe v. Moore</u>, 410 F.3d 1337 (11th Cir. 2005); <u>Cutshall v. Sunquist</u>, 193 F.3d 466 (6th Cir. 1999).  Courts have also held that sex offender registration requirements are burdensome but not unreasonable, <u>Moore</u>, 410 F.3d at 1348, and that laws which qualify the right to travel after unlawful conduct are constitutional.  <u>Jones v. Helms</u>, 452 U.S. 412, 420-23 (1981).  Furthermore, the government states Morris's right to travel is only burdened if he chooses to violate the law.

The right to travel from one state to another is a fundamental right derived from the Privileges and Immunities Clause of the 14th Amendment.  <u>Saenz v. Roe</u>, 526 U.S. 489, 501 (1999); <u>Miller v. Reed</u>, 176 F.3d 1202, 1205 (9th Cir. 1999).  A statute that unreasonably burdens the right to travel is

1    subject to strict scrutiny and will be struck down as unconstitutional "unless shown to be necessary to

2    promote a compelling governmental interest." Memorial Hosp. v. Maricopa County, 415 U.S. 250,

3    262 (1974), (internal quotations omitted).  However, when the right to travel is implicated but not

4    unreasonably burdened, the statute need only be rationally related to a legitimate governmental interest

5    to pass constitutional muster.  See Walsh v. City and County of Honolulu, 423 F.Supp.2d 1094, 1102,

6    1104 (D. Haw. 2006) (citing Martinez v. Bynum, 461 U.S. 84, 87 (1983)).

7         Sex offenders traveling from state to state may still do so freely without first seeking permission

8    from authorities.  The inconvenience of updating one's registration upon traveling interstate is also

9    justified in light of the purpose behind the registration requirements.  Faced with a Florida statute with

10   similar registration requirements, the court in Moore stated,

11             The state has a strong interest in preventing future sexual offenses and
             alerting local law enforcement and citizens to the whereabouts of those that
12           could reoffend.  Without such a requirement, sex offenders could legally
             subvert the purpose of the statute by temporarily traveling to other
13           jurisdictions for long periods of time and committing sex offenses without
             having to notify law enforcement.
14

15   Moore, 410 F.3d at 1349.  As the Shenandoah decision held, "SORNA does not prevent sex offenders

16   from traveling in interstate commerce or from relocating to other states, but merely requires them to

17   notify law enforcement officials when they do so.  Id. at 571 (citing Waybright, 561 F.Supp.2d at

18   1169-70); accord Senogles, 2008 WL 3200178 at *8.  The court agrees with those courts which have

19   found that the federal government has a compelling interest in preventing sex offenses by keeping track

20   of the whereabouts of sex offenders.  However, at a minimum, SORNA is rationally related to a

21   legitimate government interest in tracking sex offenders as they move in interstate commerce so that

22   they do not subvert state registration requirements by traveling to other jurisdictions without notifying

23   local law enforcement.  The court rejects Morris's argument that this right to travel has been unlawfully

24   burdened and finds § 2250 does not violate his right to travel.

25   / / /

26   / / /

27   / / /

28   / / /

33

1    For all of the foregoing reasons,

2    **IT IS THE RECOMMENDATION** of the undersigned United States Magistrate Judge that

3    defendant Robert Eugene Morris's Motion to Dismiss the Indictment (Dkt. #18) be DENIED.

4    Dated this 26th day of February, 2009.

5

6    _____

7    PEGGY A. LEEN
     UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

34